REGAN, Judge.
The plaintiff, Andrew Garner, Jr., filed this suit against the defendants, Robins Floor Covering and its workmen’s compensation insurer, Coal Operators Casu *347 alty Company,[1] endeavoring to recover workmen’s compensation for an injury to his left knee, incurred during the course and scope of his employment. Plaintiff asserts that he is permanently disabled from resuming his trade as a tile setter and floor finisher. He requested the imposition of statutory penalties and attorney’s fees, insisting that the defendants have been arbitrary and capricious in rejecting his claim.
The defendants answered and in effect denied that the plaintiff was permanently disabled and then asserted that he had been paid $315.00 in compensation benefits and was entitled to nothing more.
From a judgment awarding plaintiff $35.00 per week for a period not to exceed 400 weeks, but rejecting his claim for penalties and attorney’s fees, the defendants have prosecuted this appeal.
The record discloses that the plaintiff began his employment as a journeyman in the floor covering business in 1955, and after two years apprenticeship became a floor finisher and tile setter. He worked at this trade until he was injured on September 9, 1965. On that date, plaintiff and Cleveland Robins were carrying a 300 pound sanding machine up a flight of stairs when a pin slipped in the handle of the machine and suddenly caused its weight to shift. Both men were thrown off balance and the heavy machine fell on the left leg of the plaintiff and knocked him to the floor. Robins, a brother of the owner of the floor company, testified that the plaintiff complained of pain in his left knee and consequently he drove him home immediately after the accident.
He was treated by Dr. George Thomas during the week after he was injured but when he complained to his employer that he was still experiencing pain, the defendant insurer referred him to Dr. Dabney Ewin, a general surgeon. Dr. Ewin treated him for approximately two months for the knee injury and discharged him on November 29, 1965. In January of 1966, plaintiff returned to Dr. Ewin who informed him he could not receive additional treatment for the knee injury without authorization from the insurance company because he had been discharged several months before. Plaintiff then contacted Dr. J. T. Nix, a surgeon, who treated him for this knee condition for approximately two months and finally referred him to an orthopedist. From March through August 1966, he was treated by Dr. Blaise Sala-tich, an orthopedist, who discharged him after determining he had reached maximum recovery.
The medical evidence, although conflicting and confusing, preponderates to the effect that plaintiff was not able to perform the duties of a tile setter after this accident because the condition of his left knee prevents him from kneeling and putting pressure thereon. This was the conclusion of Dr. Nix, Dr. Salatich, and Dr. Russell C. Grunsten, a qualified orthopedist, whose opinion is very significant since he examined the plaintiff at the request of the defendant and appeared as its witness. Dr. Ewin was the only medical expert to conclude that the plaintiff would be able to kneel for long periods of time without pain and thus perform the duties required of a tile setter.
Where the medical experts differ is in their diagnosis of what is wrong with plaintiff’s knee and in their opinions as to whether the disabling condition was caused or accelerated by the trauma which occurred when the sanding machine fell on it.
Dr. Nix, who diagnosed plaintiff’s condition as bursitis of the left knee, said the trauma could have either caused or aggravated the condition. Dr. Salatich diagnosed plaintiff’s condition as a torn medial meniscus and asserted it was *348 caused by the accident. Dr. Grunsten stated that the plaintiff was suffering’ from chondromalacia, or a roughing of the joint surface of not only the left knee, but the right one as well. This causes fluid to accumulate on the knees. Dr. Grunsten did not connect the accident to plaintiff’s condition because in his opinion both legs were affected by the same degenerative disease. Dr. Grunsten conceded a 300 pound weight dropped on the knee could aggravate the condition. Dr. Ewin first thought the knee condition was caused by trauma; however, the presence of fluid in the right knee caused him to be uncertain of this diagnosis.
The record further discloses that the thigh of plaintiff’s left leg has atrophied since the accident and when the trial hereof occurred it was two inches less in circumference than the right thigh. Although the medical evidence conflicts as to the measurements during the trial, Dr. Ewin said there was no difference between the right and left thigh measurement while Dr. Salatich’s measurement reflected a two inch difference. We notice that both measurements were made pursuant to the instruction of and under the eye of the court. The result reached by the trial court convinces us that the judge accepted Dr. Salatich’s measurements as the more accurate ones.
Perhaps the most impressive evidence is the work record and the testimony of the plaintiff. He related that he had never had a problem with his knee before this accident occurred on September 9, 1965, although he had been in the floor finishing business for some ten years. After the accident he endeavored to return to his former occupation when Dr. Ewin advised him to do so but discontinued when he experienced excruciating pain after a few hours work. When the trial hereof occurred he held a part time job as a truck driver, working four days per week and resting three so as not to aggravate his left knee which he still described as painful.
Before the accident plaintiff earned $3.50 per hour. At the time of the trial he was paid $1.40 per hour as a truck driver.
Predicated upon the foregoing evidence the trial judge concluded that the plaintiff had incurred a disabling injury as a result of the accident of September 9, 1965, which either caused or aggravated a knee condition that has rendered him totally and permanently disabled from resuming his occupation as a tile setter and floor finisher and has accordingly rendered judgment awarding maximum benefits for a totally and permanently disabling condition.
The only question which this appeal has posed for our consideration, in the last analysis, is whether that finding of fact is so erroneous and unsupported by the evidence adduced herein as to warrant a reversal by us. A careful review of the record convinces us that the evidence contained therein fully supports that finding.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.

. Houston Fire & Casualty Insurance Company was named originally as the defendant insurer; however, the plaintiff dismissed his suit as to it when he discovered he had sued the wrong insurance company.